UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

In re:                                          :          Chapter 7

                                                :          Case No.: 18-43227-cec

Melvin Smalls &                                 :

Maxine E. Espinoza Smalls                        :

aka Maxine Espinoza                             :

                                                :

                        Debtor.                 :

---------------------------------------------------------

Wilmington PT Corporation,                       :

                                                :

                        Plaintiff,              :          Adv. Proc. No.: 19-01020-cec

                -against-                        :

                                                :

U.S. Bank National Association                   :

                                                :

                        Defendant.              :

---------------------------------------------------------

## AFFIRMATION IN RESPONSE TO PLAINTIFF'S
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

   Richard Postiglione, Esq., an attorney admitted to practice in this district hereby affirms

and sets forth as follows:

1.  This affirmant is associated with the law firm of Friedman Vartolo, LLC counsel to Fay

Servicing, LLC as Servicer for U.S. Bank National Association as Legal Title Trustee for Truman

2016 SC6 Title Trust (the "Secured Creditor").


2.  The Secured Creditor hereby submits this response to the Plaintiff's opposition and in

further support of its motion to dismiss (the "Motion") the Complaint in the above-captioned

Adversary Proceeding filed by Wilmington PT Corporation (the "Plaintiff") as it relates to the

Secured Creditor.

3.    Secured Creditor repeats and realleges all of the statements and arguments in its Motion

and the same is hereby incorporated by reference.

4.    As stated in the Motion a loan modification of the first lien mortgage held by Secured

creditor was effective as of April 1, 2011. The modification effectively resolved the foreclosure

action commenced by the Secured Creditor. This is the very same foreclosure action that would

have cut off Plaintiff's junior lien interest had it been completed.

5.    I respectfully direct the Court's attention to Exhibit B of the Motion which is a copy of

the Summons and Complaint in Defendant's underlying foreclosure action that preceded the

modification. Paragraph eight of the Complaint states that the loan was due for the September 1,

2008 payment. The monthly principal, interest and escrow payment was $2,818.00. The

modification, effective April 1, 2011, had to account for thirty months of missed payments at

$2,818.00 each as well as foreclosure fees and costs. It is clear to see why the total amount due in

the modification was higher than the original mortgage. Again, the alternative was a completed

foreclosure action. Luckily, foreclosure was avoided, and the borrower was put in a better

position to perform on both loans.

6.    The HAMP modification, annexed as Exhibit C to the Motion, lowered the monthly

payment from $2,818.00 to $1,555.15. This alleviation in the monthly payment clearly made it

easier to perform on both Secured Creditor's mortgage and the Plaintiff's mortgage.

7.    A review of the claims register in the underlying bankruptcy petition under case 18-43227

reveals a Transfer of Claim filed by the Plaintiff on February 18, 2019. The assignments of

mortgage attached to the Transfer of Claim demonstrate that Plaintiff acquired its mortgage on September 18, 2018. This was well over seven years after Defendant modified its mortgage for the benefit of the Debtor. Any argument about the loss of equity due to the modification bears no weight as Plaintiff was not the holder of the mortgage when the loan was modified. When Plaintiff acquired the mortgage via an assignment it should have already been fully aware of Defendant's foreclosure action and subsequent resolution by the loan modification. When Plaintiff acquired its mortgage the six year statute of limitations for an unjust enrichment claim had already expired as the loan was modified effective April 1, 2011. The Transfer of Claim is annexed hereto as Exhibit "A".

8.      Plaintiff's entire claim presupposes a scenario in which Defendant forecloses its mortgage and cuts off its interest. Should debtor ever default thus prompting a new foreclosure action by Defendant then Plaintiff can simply pursue this very same remedy in that action. That scenario has not currently materialized thus Plaintiff is in no real threat of damages and this suit is premature. Any argument about equity could be more appropriately made at that time.

9.      Although Defendant's position is that Plaintiff has failed to state a claim for relief, and any such unjust enrichment claim is barred by the six year statute of limitations, there is yet another remedy that Plaintiff can pursue which is to commence a foreclosure action in state court. A secondary cause of action can be added to its foreclosure complaint seeking the same relief requested within this Adversary Proceeding. The suit would then have oversight by the very same court that had oversight over Defendant's foreclosure and subsequent modification and resolution. In fact, if the borrower is in default on Plaintiff's mortgage then Plaintiff should have already commenced a foreclosure action and pursued this remedy rather than allowing additional interest as well as fees and costs to accrue.

10.    This adversary proceeding should be dismissed in its entirety. Defendants respectfully request that this Court grant the instant Motion to Dismiss along with such other and further relief as this Court deems is just and proper.

Dated: May 31, 2019
        Garden City, New York

By: /s/ Richard Postiglione, Esq.
Richard Postiglione, Esq.
FRIEDMAN VARTOLO, LLP
Attorneys for Fay Servicing, LLC
1325 Franklin Avenue, Suite 230
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------

In re:                                    :           Chapter 7

                                          :           Case No.: 18-43227-cec

Melvin Smalls &                           :

Maxine E. Espinoza Smalls                 :

aka Maxine Espinoza:                      :

                          Debtor.         :

-------------------------------------------------------

Wilmington PT Corporation,                :

                                          :

                          Plaintiff,      :           Adv. Proc. No.: 19-01020-cec

                                          :

        -against-                         :

                                          :

U.S. Bank National Association            :

                                          :

                          Defendant.

-------------------------------------------------------

<u>**CERTIFICATE OF SERVICE**</u>

        On May 31, 2019, I served a true copy of the annexed **MOTION TO DISMISS by**
mailing the same by First Class Mail in a sealed envelope, with postage prepaid
thereon, in a post office or official depository of the U.S. Postal Service within
the State of New York, addressed to the last known address of the addressee, and
the property address as indicated on the attached Service List annexed hereto.


                                          By: <u>/s/Richard Postiglione</u>

                                          FRIEDMAN VARTOLO LLP

                                          1325 Franklin Avenue, Ste. 230

                                          Garden City, New York 11530

                                          T: (212) 471-5100

                                          F: (212) 471-5150

## SERVICE LIST

Seth D. Weinberg
Hasbani & Light, P.C.
450 Seventh Avenue
Ste 1408
New York, NY 10123
***Plaintiff's Attorney***

# EXHIBIT A

B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District Of _____

In re _____,          Case No. _____

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.


_____          _____
        Name of Transferee                          Name of Transferor

Name and Address where notices to transferee          Court Claim # (if known): _____
should be sent:                                       Amount of Claim: _____
                                                      Date Claim Filed: _____



Phone: _____          Phone: _____
Last Four Digits of Acct #: _____          Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):



Phone: _____
Last Four Digits of Acct #:_____



I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____          Date:_____
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 & 3571.

| **NATIONAL CITY BANK** | **EQUITY RESERVE℠ AGREEMENT – NATIONAL HOME EQUITY**<br>(Not to be Used for Lines Secured by a Texas Homestead)<br>Date: 8/13/2007     Reference No. ▮▮▮▮▮ |
|---|---|

**Definitions.** "You" and "your" means each person who signs below for an Equity Reserve Line of Credit Account ("Equity Reserve" or "Account") or uses the Equity Reserve Line. "Bank" means National City Bank and its successors and assigns. "Agreement" means this equity reserve line of credit agreement including the HUD-1 or HUD-1A settlement statement. "Check" means any convenience check and special Fixed Rate Lock convenience checks we issue to you to access your Equity Reserve Line. "Card" means one or more credit cards or Automated Teller Machine (ATM) cards. "Fixed Rate Lock" or "FRL" means the option to fix the rate and payment on an Advance of all or part of your available Line. "Line" means that portion of your Equity Reserve Line that is not subject to an FRL. "Line Advance" means an Advance without an FRL. "FRL Advance" means an Advance with an FRL. The "Indexes" for Line Advances and FRL Advances are defined in the section of this Agreement called "Finance Charge for Line Advances and FRL Advances and During the Repayment Period." Other terms are defined elsewhere in this Agreement.

**Agreement to Terms.** Bank has established an Equity Reserve Line at your request. You agree that the following material terms and conditions will apply to your Equity Reserve Line.

**Line of Credit.** Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (9 years 10 months in Connecticut) (the Draw Period). At the end of the Draw Period, you must repay any outstanding balances during the Repayment Period as provided in the Payments section below.

The initial amount of your Equity Reserve Line is $     **60,000.00**     (Credit Limit).
You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks. The FRL balance includes the FRL advance fee. Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period. Bank may reduce the amount of your Credit Limit under certain conditions described in this Agreement.

**Advances.**

**MINIMUM INITIAL ADVANCE: To open your Equity Reserve Line, an initial minimum advance of $     40,000.00     is required.**

You may obtain cash advances (Advances) under your Line by issuing Checks supplied by Bank, by contacting Customer Service or by way of any other Bank approved plan. Bank will charge your Checks directly against your Equity Reserve Line. You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks. The minimum FRL Advance that you can receive using an FRL Check is $5,000. FRL Check Advances will automatically have a 20-year Repayment Term. You may contact Customer Service after a FRL Check posts to your Line to change the Repayment Term to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances changed to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service. FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check. FRL Checks for less than $5,000 will be posted as a Line Advance. You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement.) Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged.

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states where such access is limited. You authorize Bank to issue you a Card for use with the Line. You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances made by Card to your Line.

If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing. You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN. You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-533-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003. (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period. Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle.

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Limit; or after the Draw Period ends; or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement, and upon Bank's request you will return Checks and/or Cards. Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions.

Charges from foreign merchants and financial institutions may be made in a foreign currency. Bank will bill you in U.S. Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges. In the case of VISA Accounts: the exchange rate applied to each such transaction is a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**Finance Charge for Line Advances and FRL Advances and During the Repayment Period.**

a) **Line Advances:** Bank figures the finance charge on Line Advances by applying the periodic rate to the "average daily balance" of your Line. To get the "average daily balance", Bank takes the beginning balance of the Line each day, adds any new Line Advances including if applicable, any fees (other than the annual, late payment or subordination fees), and other debits, and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance of Line Advances."

Line Advances are subject to finance charges from the date of transaction to the date payment in full of the outstanding balance is posted to the Line. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an Index. The Index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your billing cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest .01% (Line Index).

The **ANNUAL PERCENTAGE RATE** is the Line Index plus    **0.500**    % (Line Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of    **08/10/2007**    , the current periodic rate of **FINANCE CHARGE** is    **0.729**    % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of    **8.750**    %.

The annual percentage rate and the periodic rate may increase if the Line Index increases. In the event of an increase, the finance charge will increase and the minimum payment amount may increase. An increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount during the Draw Period.



**b) FRL Advances:** Bank figures the finance charge on each FRL Advance by applying the periodic rate to the "average daily balance" of the FRL Advance. To get the "average daily balance", Bank takes the beginning balance of the FRL Advance each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance of the FRL Advance. Then, Bank adds up all the daily balances of the FRL Advance for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance of each FRL Advance".

Each FRL Advance is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The Index shall be the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded, if necessary, to the nearest 0.125% (FRL Index). The FRL Index can be found in the Federal Reserve Statistical Release H. 15 at www.federalreserve.gov/releases/h15.

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of    08/13/2007   , the FRL Margin, the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term are listed in the table below:

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of **FINANCE CHARGE** | **ANNUAL PERCENTAGE RATE** |
|---|---|---|---|
| **5-year FRL:** 60 monthly payments | 3.250 | 0.688 | 8.250 |
| **10-year FRL:** 120 monthly payments | 3.500 | 0.708 | 8.500 |
| **15-year FRL:** 180 monthly payments | 3.750 | 0.729 | 8.750 |
| **20-year FRL:** 240 monthly payments (automatic term for FRL checks you write) | 4.250 | 0.771 | 9.250 |
| **7-year "Interest Only" FRL:** 83 monthly payments of one penny plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month. | 3.500 | 0.708 | 8.500 |

**c) Both Line Advances and FRL Advances:** In no event shall the periodic rate of **FINANCE CHARGE** be more than 1.50% per month or less than 0.25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18.00% or less than 3.00%. The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate(s) for the billing cycle.

**d) Repayment Period for Line Advances:** Any outstanding Line balance will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances of less than $10,000 as stated in subsections (b) and (c) above. The Index value is the highest FRL Index from the 1st business day through the 11th last business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above.

**Other Finance Charges.**       A Broker Fee **FINANCE CHARGE** of $       1,400.00

A Discount Fee **FINANCE CHARGE** of $       0.00       (    0.000   % of Credit Limit)

A Flood Determination Fee **FINANCE CHARGE** of $       3.00

A Processing Fee **FINANCE CHARGE** of $       0.00

A Settlement Fee **FINANCE CHARGE** of $       0.00   (Estimated)

An Escrow Fee **FINANCE CHARGE** of $       0.00   (Estimated)

A Document Review Fee **FINANCE CHARGE** of $       0.00   (Estimated)

An FRL Advance Fee **FINANCE CHARGE** of $50 for each Fixed Rate Lock used.

**Other Charges.** In addition to finance charges, the following other charges will apply:
- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable.
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Account is past due.
- An overlimit fee of $25 whenever you go over your Credit Limit. Bank may charge an additional $25 for each billing cycle that you remain over your Credit Limit.
- A returned payment fee of $30 if you make a payment which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order.
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States.
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge.
- An early termination fee of       0.000 % of the Credit Limit or $       0.00 , whichever is less, if you close your Line in the first 36 months.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, such as a subordination fee, for services that Bank performs for you that you have requested. The application of any fee shall not cure the default which initiated the fee.

**Closing Costs.** You will pay the other charges due at the closing of your Equity Reserve Line, including, but not limited to, security interest fees, as itemized on the HUD-1 or HUD-1A settlement statement provided to you by the person conducting the closing, which settlement statement is hereby attached to and made a part of this Agreement for this purpose as an Exhibit.

**Security Interests.** Your Equity Reserve Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property. Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Limit. You assign to Bank any unearned premiums of all insurance connected with your Equity

7/22/2006

NHAGREE2

Reserve Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling. You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose.

**Property Insurance.** You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law., You must carry flood insurance if required by federal law. **You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier.** You agree to furnish Bank with written evidence of such insurance, and proof of payment of insurance premiums. If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Equity Reserve Line, subject to the same finance charges as Line Advances. You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Equity Reserve Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Equity Reserve Line. You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges on your Equity Reserve Line.

**Statements.** Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advance(s), fees, payments, other credits, other charges and debits, and finance charge(s).

**Payments.** Your payments will be due monthly. You may pay the entire unpaid balance of your Line and/or your FRL Advance(s) at any time. You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.

    **a) Line Minimum Payment:** The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment) plus any balance in excess of your Credit Limit, if any.

    **b) The FRL Minimum Payment is:** For all FRL Advances except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL Advance including the FRL Advance Fee, at the fixed rate applicable to that FRL Advance calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "FRL Advances." If you choose the 7-year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding balance of the FRL Advance which balance includes the FRL Advance Fee, at the fixed rate applicable to that FRL Advance (as described in the section of this Agreement called "FRL Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance. Any amount still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added to the final minimum payment due. Additional payments on any FRL Advance may be made at any time but you will continue to be obligated to make the fixed payment for the FRL Advance as long as any amount is still owing on the FRL Advance. The amount of any reduction in principal from a payment on an FRL Advance will become available to you on your Line once it is posted, until the end of the Draw Period.

    **c) Repayment Period:** The Line Minimum Payment will not fully repay the principal that is outstanding on the Line by the end of the Draw Period. During the Repayment Period you may continue to make scheduled payments on any FRL Advance balances outstanding at the end of the Draw Period until they are paid in full. Additionally, any outstanding Line balance will be converted to a Fixed Rate Lock without an FRL Advance fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL Advance of equal Repayment Term as described in the section of this Agreement called "FRL Advances and Repayment Period" for Line Advances. The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more; or one hundred twenty (120) equal monthly payments for balances of less than $10,000. Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due.

Payments will be applied in the following order: First, to each FRL Advance on a first in-first out basis for all unpaid periodic finance charges and then to the FRL Advance's principal balance in an amount necessary to amortize the FRL Advance within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line. For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last. If there are no balances on the Line, overpayments are applied as a prepayment to the FRL Advance(s) on a first in-first out basis. If there are no balances on any FRL Advance or on the Line, overpayments are credited to the Line and returned upon request. In order to make additional partial prepayments to an FRL Advance or to prepay an FRL Advance in full without paying off your Line, you must contact Customer Service to make arrangements to do so.

**Stop Payment Orders.** We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment. A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months. Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective. A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective.

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number. You agree that it is current industry standard to process stop payment orders by means of computer technology. Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment. Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor. Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date. We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period.

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order.

In the event we recredit the Account for a paid Check, then you hereby assign to us all rights against third parties. You or any joint Account holder may order a stop payment. You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment; that it is your obligation to prove the fact and amount of damage suffered; and that in no case will we be liable for more than your actual damage.

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care. You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order.

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928.

**Termination of Equity Reserve Line.** Bank can terminate your Equity Reserve Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that:
* You engage in fraud or material misrepresentation in connection with your Equity Reserve Line.
* You do not meet the repayment terms of this Agreement.
* Your action or inaction adversely affects the collateral or Bank's rights in the collateral.

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you). Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full.

NHAGREE3

**Suspension or Reduction of Line.** Bank can refuse to make additional extensions of credit or reduce your Credit Limit if you breach a material obligation of this Agreement in that:

- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Line.
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation under this Agreement.
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Limit.
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice.
- The maximum annual percentage rate is reached.

If your Line is suspended and you have used any FRL Advance(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL Advance balances to your Line.

Bank will give you written notice of any such action and conditions for reinstating your credit privileges. Bank may reinstate your credit privileges when the conditions leading to suspension are cured to Bank's satisfaction. Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Line no longer exist. An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law.

**Change in Terms.** Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice:
- The Index and margin used for this Equity Reserve Line if the original Index is no longer available.
- A change that you specifically agree to.
- A change that benefits you.
- An insignificant change.
- Other changes permitted by applicable law.

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter.

**Choice of Law.** This Agreement was made in Ohio. Accordingly, the provisions of this Agreement will be governed by (i) federal laws and regulations and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations and without regard to conflict of law principles.

**Privacy. You agree that except as otherwise prohibited by law, Bank may provide to others, including, but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering you products or services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. If you write to National City, you must include your name, address, account number and social security number in your correspondence. As used in this Agreement, the term "affiliates" means the current and future affiliates of National City Bank as identified in the privacy notice at www.NationalCity.com. You also agree that Bank has an established business relationship with you, and unless otherwise prohibited by law National City may contact you to offer you products and services that National City believes may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us, including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service.**

**Other Provisions.** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you.

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Line Advances, FRL Advances and charges on the Equity Reserve Line. With reasonable notice to process the request, any of you may request that no further Advances on the Line are permitted. You also agree that any owner of the Dwelling securing the Account can direct Bank that no further Advances on the Line be permitted. However, reinstatement will only be made on the joint request of all of you and, at Bank's option, any or all owners of the Dwelling securing the Account.

Your rights in your Equity Reserve Line may not be assigned. Bank may transfer your Equity Reserve Line and Bank's rights under this Agreement. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable. This Agreement is between you and Bank and except for successors or assigns as provided for by this Agreement, this Agreement will not confer any rights upon any third party. This Agreement, the mortgage, deed of trust or other security instrument perfecting Bank's security interest, any attachments to such documents and the HUD-1 or HUD-1A settlement statement describe all agreements between you and Bank with respect to the Equity Reserve Line and there are no other agreements. You represent that you are competent to enter into this Agreement. If this Equity Reserve Line is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations and disclosures included in this Agreement but not required by law are not an admission of such rights by Bank. All actions under this Agreement requiring Bank's consent are at Bank's sole discretion, and such consent may be withheld for any reason. All amounts owed under this Agreement shall be without relief from valuation and appraisement laws.

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. Bank may accept late payments or partial payments without losing any of its rights. **If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to the Customer Service address listed on your statement.** If your payment is made to any other address, Bank may accept the payment without losing any of its rights.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently.

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Equity Reserve Line as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original. You can change any term of this Agreement only in a writing signed by you.

You agree that, to the extent not prohibited by applicable law, Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if Bank has been advised of the possibility of such damages.

From time to time, Bank may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.

**If you believe that Bank has information about you that is inaccurate or that Bank has reported or may report to a credit reporting agency information about you that is inaccurate, please notify Bank of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.**



NHAGREE4

Notices. THE FOLLOWING NOTICES ARE GIVEN BY BANK ONLY TO THE EXTENT NOT INCONSISTENT WITH 12 U.S.C. SECTION 85 AND APPLICABLE FEDERAL REGULATIONS AND OPINIONS AND THE CHOICE OF LAW PROVISION SET FORTH HEREIN (WITH RESPECT TO WHICH BANK EXPRESSLY RESERVE ALL RIGHTS). You acknowledge receipt of all notices before becoming obligated.

**California:** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

**Colorado:** If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

**FLORIDA DOCUMENTARY STAMP TAX:** If you sign this note in Florida, a Florida Documentary Tax in the amount required by Florida law has been or will be paid directly to the Department of Revenue.

**Missouri:** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**New York:** YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

**North Dakota:** THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**Oregon:** NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

**Texas:** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**Vermont:** NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

COPY RECEIVED. You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights").

PRINTED NAME(S):                          SIGNATURE(S):

MAXINE ESPINOZA- SMALLS        X _Maxine Espinoza - Smalls_

_____        X _____

_____        X _____

_____        X _____

Address of Dwelling: __983 EAST 93RD STREET BROOKLYN , New York 11236__

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means for you:** When you open an account we will ask you for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

NHAGREE5

YOUR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information.
- Your name and Line number.
- The dollar amount of the suspected error.
- Describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

©2007 National City Corporation



# ALLONGE TO THE NOTE

**LOAN #:** ███████████

**Previous Loan #:**

**Borrower:** MAXINE ESPINOZA- SMALLS

**Date of Note:** 08/13/2007

**Loan Amount:** $60,000.00

**Property Address:** 983 EAST 93RD STREET, BROOKLYN, NY 11236

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: TRINITY FINANCIAL SERVICES, LLC , Without any recourse, representation or warranty, express or implied

### SUMMIT REAL ESTATE PARTNERS L.P.

Signature: _Thm Lhm_

Printed Name: _Thomas L Gervois_

Title: _Mg Member_

## ALLONGE TO THE NOTE

█████████████████

Loan Number:          ████████████
Document Reference #: ██████████████
Borrower:             MAXINE ESPINOZA- SMALLS
Date of Note:         8/13/2007
Loan Amount:          $60,000.00
Property Address:     983 EAST 93RD STREET, BROOKLYN, NY, 11236

For Value received, I hereby transfer, endorse and assign the within Note.

Pay to the order of:

_____ Wilmington PT Corporation _____, Without recourse

**Trinity Financial Services, LLC**

By: _____ *Kaleena Ogo* _____
Name:   Kaleena Ogo
Title:     Assistant Vice President



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

**Document ID:** 2011022300622001    Document Date: 08-12-2010    Preparation Date: 02-23-2011

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| T.D. SERVICE COMPANY | T.D. SERVICE COMPANY |
| 1820 E. FIRST ST. | 1820 E. FIRST ST. |
| SUITE 300 | SUITE 300 |
| SANTA ANA, CA 92705 | SANTA ANA, CA 92705 |
| 800-843-0260 | 800-843-0260 |
| jyanez@tdsf.com | jyanez@tdsf.com |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8143 | 15 | Entire Lot | | 983 EAST 93RD STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2007000475454

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| PNC BANK, N.A. | MORTGAGE ELECTRONIC REGISTRATION |
| 6750 MILLER ROAD | SYSTEMS, INC. |
| BRECKSVILLE, OH 44141 | 1901 E VOORHEES ST, SUITE C |
| | DANVILLE, IL 61834 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 03-07-2011 10:02 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 42.00 | **2011000081784** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

Recording Requested By:
_____
Prepared By: **PNC Bank N.A.**

**When Recorded Return to:**
T.D. Service Company-665
1820 E. First St., Suite 210
Santa Ana, CA 92705

███████████████████████

Property Address:
**983 EAST 93RD STREET**
**BROOKLYN, NY 11236**
Property Location:
_____

| NY0-AM | 8/12/2010 | Mers Min # | This space for Recorder's use |
| NCC ID# ███ | DBI ID# ██████████████████ | | |

## ASSIGNMENT OF MORTGAGE

For Value Received, **PNC BANK, N.A. SUCCESSOR BY MERGER TO NATIONAL CITY BANK**, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is **6750 Miller Road, Brecksville OH 44141** does hereby grant, sell, assign, transfer and convey unto  _____ whose address is _____ all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | **NATIONAL CITY BANK** |
| Made By: | **MAXINE ESPINOZA-SMALLS AND MELVIN SMALLS** |
| Date of Mortgage: | **8/13/2007** |
| Original Loan Amount: | **$60,000.00** |
| Section: **N/A** | Lot: **N/A** Block: **N/A** |

Recorded in **Kings County**, NY on: **9/14/2007**, book N/A, page N/A and instrument number **2007000475454**

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated: **8/12/2010**

          **PNC BANK, N.A. SUCCESSOR BY MERGER TO
NATIONAL CITY BANK**

          By: _____
          **Angela Venner, President**

State of **SC**, County of **Lexington**

On **8/12/2010**, before me, **Peggy D. Williams**, a Notary Public, personally appeared **Angela Venner, President** of **PNC BANK, N.A. SUCCESSOR BY MERGER TO NATIONAL CITY BANK** personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public, **Peggy D. Williams**
My Commission Expires: **2/17/2015**

          ┌─────────────────────────────┐
          │ **PEGGY D. WILLIAMS**    SEAL │
          │ Notary Public │
          │ State of South Carolina │
          │ My Commission Expires February 17, 2015 │
          └─────────────────────────────┘

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**
**ITS SUCCESSORS AND ASSIGNS**
**1901 E Voorhees St, Suite C**
**Danville, IL 61834**

240207



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 2 |
|---|---|---|

**Document ID:** 2015012300351001      Document Date: 01-28-2014      Preparation Date: 01-23-2015
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 1

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND MONROE - TRINITY<br>82 JIM LINEGAR LANE<br>BRANSON WEST, MO 65737<br>SUPPORT@SIMPLIFILE.COM | RICHMOND MONROE GROUP<br>82 JIM LINEGAR LANE<br>BRANSON WEST, MO 65737<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8143 | 15 | Entire Lot | 983 EAST 93rd STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2011000081784

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC. (ME<br>PO BOX 2026<br>FLINT, MI 48501-2026 | TRINITY FINANCIAL SERVICES, LLC<br>2618 SAN MIGUEL DR STE 303<br>NEWPORT BEACH, CA 92660 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed      01-30-2015 11:42
City Register File No.(CRFN):
         **2015000033538**

*Annette M Hill*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

Recording Requested By:
DREAMBUILDER INVESTMENTS, LLC

**When Recorded Return To:**
Richmond Monroe Group
PO Box 458
Kimberling City, MO 65686

Trinity R'T

## CORPORATE ASSIGNMENT OF MORTGAGE

Kings, New York   REFERENCE #:[redacted]   "ESPINOZA- SMALLS"
INVESTOR #:
MERS #:[redacted]   VRU #: 1-888-679-6377

Assignment Prepared on: January 28th, 2014.

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") at P.O. Box 2026, Flint, MI 48501-2026.
Assignee: TRINITY FINANCIAL SERVICES, LLC  at  2618 SAN MIGUEL DR, STE 303, NEWPORT BEACH, CA 92660.

Executed By: MAXINE ESPINOZA- SMALLS AND MELVIN SMALLS  To: PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK
Date of Mortgage: 08/13/2007 Recorded:  09/14/2007  as Instrument No.: 2007000475454 In Kings County , State of New York.

- Assigned Wholly by PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK  TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINE FOR NATIONAL CITY BANK, ITS SUCCESSORS AND ASSIGNS.  Dated: 08/12/2010 Recorded:  03/07/2011  as Instrument No.: 2011000081784

District/Section/Block/Lot: -8143-15

Property Address: 983 EAST 93RD STREET, BROOKLYN, NY  11236

    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $60,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
On January 28th, 2014
By: _Tara Newton_
TARA NEWTON, Assistant Secretary

STATE OF MISSOURI
COUNTY OF STONE

On January 28th, 2014, before me, H. MCCANDLESS, a Notary Public in and for STONE in the State of MISSOURI, personally appeared TARA NEWTON, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of STONE, State of MISSOURI.

WITNESS my hand and official seal,

_H. McCandless_
H. MCCANDLESS
Notary Expires: 12/18/2016  #12426371
Stone, Missouri

```
H. MCCANDLESS
Notary Public, Notary Seal
State of Missouri
Stone County
Commission # 12426371
My Commission Expires December 18, 2016
```

(This area for notarial seal)



| | | |
|---|---|---|
| **NYC DEPARTMENT OF FINANCE** | | |
| **OFFICE OF THE CITY REGISTER** | | |

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 3** |
|---|---|
| Document ID: **2018102201080001** — Document Date: 09-18-2018 | Preparation Date: 10-22-2018 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| RICHMOND MONROE | RICHMOND MONROE GROUP |
| 82 JIM LINEGAR LANE | PO BOX 458 |
| BRANSON WEST, MO 65737 | KIMBERLING CITY, MO 65686 |
| SUPPORT@SIMPLIFILE.COM | SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8143 | 15 | Entire Lot | 983 EAST 93RD STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2007000475454
☒ Additional Cross References on Continuation Page

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| TRINITY FINANCIAL SERVICES, LLC | WILMINGTON PT CORPORATION |
| 2618 SAN MIGUEL DR., SUITE 303 | 1688 MERIDIAN AVE, 7TH FLOOR |
| NEWPORT BEACH, CA 92660 | MIAMI BEACH, FL 33139 |

### FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      10-23-2018 09:33
City Register File No.(CRFN):
**2018000351566**

*Annette M Hill*

***City Register Official Signature***



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**  **PAGE 2 OF 3**

**Document ID:** 2018102201080001          Document Date: 09-18-2018          Preparation Date: 10-22-2018
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2011000081784
**CRFN:** 2015000033538

Recording Requested By:
Trinity Financial Services

When Recorded Return To:
Wilmington PT Corporation/Kaleena Ogo
PO BOX 458
KIMBERLING CITY, MO 65686
Ref#: ████████████████

Loan #: ████████
TS Ref ████████████

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/KINGS

Assignment Prepared on: September 18, 2018

**ASSIGNOR: Trinity Financial Services, LLC**, at 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660

**ASSIGNEE:** *Wilmington PT Corporation*, at *1688 Meridian Ave 7th Fl, Miami Beach FL, 33139*

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated 8/19/2007, in the amount of $60,000.00, executed by MAXINE ESPINOZA- SMALLS AND MELVIN SMALLS to National City Bank and Recorded: 9/14/2007, Instrument #: 2007000475454 in KINGS County, State of New York.  *✗ 8/13/2007*

Property Address: 983 EAST 93RD STREET, BROOKLYN, NY, 11236
Block: 8143 / Lot: 15

Document References:
- Assignment Dated: 8/12/2010 from PNC BANK, N.A. SUCCESSOR BY MERGER TO NATIONAL CITY BANK to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS Recorded: 3/7/2011, Instrument #: 2011000081784
- Assignment Dated: 1/28/2014 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS to Trinity Financial Services, LLC Recorded: 1/30/2015, Instrument #: 2015000033538

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Trinity Financial Services, LLC

On: September 18, 2018

By: *Kaleena Ogo*
Name: Kaleena Ogo
Title:    Assistant Vice President

State of MISSOURI
County of STONE

On September 18, 2018, before me, Jessica Brown, a Notary Public in and for STONE County, in the State of MISSOURI, personally appeared Kaleena Ogo, Assistant Vice President, Trinity Financial Services, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Jessica Brown*
Jessica Brown
Notary Expires: 3/31/2022 / #: 14599617

NOTARY SEAL

JESSICA BROWN
My Commission Expires
March 31, 2022
Stone County
Commission #14599617

NY/KINGS

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Melvin Smalls** | Social Security number or ITIN | **xxx–xx–7553** |
| | First Name   Middle Name   Last Name | EIN   _ _–_ _ _ _ _ _ _ | |
| Debtor 2 (Spouse, if filing) | **Maxine E Espinoza Smalls** | Social Security number or ITIN | **xxx–xx–4385** |
| | First Name   Middle Name   Last Name | EIN   _ _–_ _ _ _ _ _ _ | |
| United States Bankruptcy Court   **Eastern District of New York** | | Date case filed for chapter **7   6/1/18** | |
| Case number:   **1–18–43227–cec** | | | |

# NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

The Claim No.listed below was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim Other than for Security in the clerk's office of this court on _____ (date).

<u>Transferor data will be printed by the BNC</u>
Name of Alleged Transferor

<u>Transferee data will be printed by the BNC</u>
Name of Transferee

Address of Alleged Transferor:

Address of Transferee:

## ~~DEADLINE TO OBJECT TO TRANSFER~~

The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.

Dated: February 19, 2019

For the Court, Robert A. Gavin, Jr., Clerk of Court

**trcnew.jsp** [Notice of Trans of Claim rev. 02/01/17]

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207−1 | User: cteutonic | Date Created: 2/19/2019 |
| Case: 1−18−43227−cec | Form ID: trc | Total: 2 |

**Recipients of Notice of Electronic Filing:**

ust       Office of the United States Trustee       USTPRegion02.BR.ECF@usdoj.gov

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

9352652     TRINITY FINANCIAL SERVICES, LLC     2618 SAN MIGUEL DRIVE, SUITE 303     NEWPORT BEACH, CA 92660

TOTAL: 1